IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| G&G CLOSED CIRCUIT EVENTS, LLC, <br> as Broadcast Licensee of the May 8, 2021 <br> Saul "Canelo" Alvarez v. Billy Joe Saunders <br> Championship Fight Program, <br><br>     Plaintiff, <br><br> v. <br><br> 1) 800 LIVE ENTERTAINMENT LLC, <br> individually, and d/b/a 800 LIVE; and <br> 2) STANLEY WINSTON, individually, and d/b/a <br> 800 LIVE, <br><br>     Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 5:24-cv-00450-JKP-HJB |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT & BRIEF IN SUPPORT**

Plaintiff G&G Closed Circuit Events, LLC ("Plaintiff") files *Plaintiff's Motion for Default Judgment & Brief in Support*.

A.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

1.      This is an "Anti-Piracy" case involving the Federal Communications Act of 1934, as amended (the "Communications Act"). The Communications Act combats against the piracy of radio and television signals.  *See* 47 U.S.C. §§ 553 and 605. In this case, Defendants 800 Live Entertainment LLC, individually, and d/b/a 800 Live and Stanley Winston, individually, and d/b/a 800 Live (collectively referred to herein as the "Defendants") illegally intercepted the closed-circuit telecast of the May 8, 2021 Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight Program, including all of the undercard and preliminary bouts and commentary encompassed in the television broadcast of the event (the "Event") and exhibited the Event in Defendants' commercial establishment named 800 LIVE and located at 800

Lexington Avenue, San Antonio, Texas 78212 (the "Establishment"), without Plaintiff's

authorization and without paying the licensing fee to Plaintiff.

2.      On May 2, 2024, Plaintiff filed *Plaintiff's Original Complaint* against Defendants.

*See* [Doc. 1].

3.      Defendant 800 Live Entertainment LLC was served on September 30, 2024. *See*

[Doc. 13].

4.      Defendant Stanley Winston was served on November 24, 2024. *See* [Doc. 14].

5.      On December 24, 2024, Plaintiff filed its *Plaintiff's Request for Entry of Default*

requesting the entry of default against Defendants. *See* [Doc. 15].

### B.   COMMUNICATIONS BETWEEN PLAINTIFF AND DEFENDANT

6.      To date, Defendants have not filed an answer or any other responsive pleading

with the Court. Nor have Defendants made an appearance in this case. No one has contacted

Plaintiff on behalf of Defendants, Defendants have not contacted Plaintiff, nor has Plaintiff been

in contact with Defendants or anyone on behalf of Defendants concerning this lawsuit.

7.       Plaintiff now requests a final default judgment against Defendants in this motion

for final default judgment.

### C.   STATEMENT OF THE ISSUES TO BE RULED ON BY THE COURT

Issue #1:      Whether Defendants violated the Federal Communications Act of 1934 for the unauthorized interception and broadcast of the closed-circuit telecast of the May 8, 2021, Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight Program, including undercard or preliminary bouts, under either 47 U.S.C. § 553 or 47 U.S.C. § 605.

Issue #2:      Whether Plaintiff is entitled to receive statutory damages and the amount of statutory damages to be awarded to Plaintiff against Defendants, pursuant to 47 U.S.C. §§ 553 or 605.

Issue #3:      Whether Plaintiff is entitled to receive additional damages and the amount of additional damages to be awarded to Plaintiff against Defendants for willfulness, pursuant to 47 U.S.C. §§ 553 or 605.

Issue #4:      Whether Plaintiff is entitled to recover its attorney's fees and the amount of attorney's fees to be awarded to Plaintiff against Defendants, pursuant to 47 U.S.C. §§ 553 or 605.

## D.  Summary of the Argument

8.      In this case, Defendants illegally intercepted the closed-circuit telecast of the Event, including undercard and preliminary bouts and commentary, and exhibited the Event in Defendants' Establishment, without authorization from Plaintiff and without paying the commercial licensing fee to Plaintiff.

9.      Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Exhibit "A" at ¶ 3. Plaintiff possessed the ***exclusive*** proprietary rights to exhibit and sublicense the right to exhibit the Event at commercial establishments. *See* Exhibit "A" ¶ 3; Exhibit "A-1" (page 1). Through a licensing agreement with the promoter of the Event, Plaintiff was licensed to exhibit the Event at closed circuit locations, such as bars, clubs, lounges, social clubs, restaurants and other commercial establishments throughout the State of Texas. *See* Exhibit "A" at ¶¶ 3-4; Exhibit "A-1". In Texas, the Event was legally available to commercial establishments ***only*** through an agreement with Plaintiff. *See* Exhibit "A" at ¶ 4; Exhibit "A-1".

10.      On the date of the Event's Establishment was a commercial establishment and was open to the public. *See* Exhibit "A-2". The Event was shown and exhibited at Defendants' Establishment, and done so willfully, knowingly, and purposely. *See* Exhibit "A-2". Defendants, however, did not receive permission from Plaintiff, did not receive authorization from Plaintiff, and did not enter into an agreement with Plaintiff to show the Event at the Defendants' Establishment. *See* Exhibit "A" at ¶¶ 7-8. Nor did Defendants pay Plaintiff a licensing fee in order to show the Event at the Establishment. *See* Exhibit "A" at ¶¶ 7-8.

E.  ARGUMENTS & AUTHORITIES

11.     The unauthorized interception and broadcast of either cable or satellite transmissions violates either 47 U.S.C. §§ 553 or 605.[1] Accordingly, all acts of unlawful interception, receipt and broadcast of the signal of the Event by Defendants was in violation of the Federal Communications Act.  *See Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002) (Gilmore, J.) ("The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services.  Thus, Congress enacted a variety of penalties and remedies to 'protect the revenue of television cable companies from unauthorized reception of their transmissions.'").

12.     As Defendants owned, operated, and managed the Establishment on the night of the Event, Defendants could not have obtained the transmission of the Event had Defendants not undertaken specific wrongful actions to intercept and/or receive and broadcast the telecast. *See* Exhibit "A" at ¶¶ 8-9; Exhibit "D"; *see also Plaintiff's Original Complaint* [Doc. 1], ¶¶ 2-3.[2]  In order for an unauthorized commercial establishment to receive a broadcast, such as the Event, there must be some wrongful action, such as using an unauthorized decoder, obtaining cable or

---

[1]  *See, e.g., J&J Sports Prods., Inc. v. Mandell Family Ventures, LLC,* 751 F.3d 346, 353-54 (5th Cir. May 2, 2014) ("A logical reading of the two provisions reveals a clear demarcation whereby [§] 605 deals with communications traveling through the air (via radio), [and] § 553 covers communications traveling over cable wire.").

[2]  By Defendants' default, the well pleaded allegations of facts in the *Complaint* are considered admitted and taken as true.  *See e.g.*, *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability."); *J&J Sports Prods. v. El Pescador Mexican Seafood, Inc.*, 2010 U.S. Dist. LEXIS 127940 at * 4 (E.D. Tex. Oct. 27, 2010) (Mazzant, J.) ("Defendant are deemed to have admitted by default all the factual allegations in Plaintiff's Complaint. Fed. R. Civ. P. 8(b)(6)."); *EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008) (Lynn, J.) ("By virtue of their default, Defendant have admitted that the factual allegations in the Complaint are true."); *J&J Sports Prods. v. Halftime Bar Group, LLC*, 2012 U.S. Dist. LEXIS 166450, at *2 (N.D. Tex. Oct. 17, 2012) ("Where, as here, Defendant have defaulted, the factual allegations of the Complaint are taken as true.").

satellite service and illegally altering the cable or satellite service to bring the signal of the Event

into the establishment, or moving an unauthorized decoder or satellite card from its authorized

location to the establishment. *See* Exhibit "A" at ¶ 9; *see, e.g.*, *Kingvision Pay-Per-View, Ltd. v.

Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (explaining that in order to access the

telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable

service or improperly relocate an authorized decoder. "In any of these scenarios, the illegality of

the action would have been apparent to the perpetrator").

13.      The transmission of the Event originated via satellite. *See* Exhibit "A" at ¶ 5.

Accordingly, Plaintiff moves for judgment under 47 U.S.C. § 605; *see also J&J Sports*

*Productions, Inc. v. Enola Investments, LLC and Tiffaney Enola Small*, 2020 U.S. App. LEXIS

6184, *5 (5th Cir. Feb. 28, 2020) (finding that § 605 applied after noting that the "only

undisputed evidence is that the Fight was originally transmitted via satellite."); *J&J Sports*

*Prods. v. Q Café, Inc.*, 2012 U.S. Dist. LEXIS 8700 (N.D. Tex. Jan. 25, 2012) ("Plaintiff has

elected to proceed pursuant to 47 U.S.C. § 605 because the Event originated via satellite."). To

establish liability under § 605, Plaintiff, as exclusive licensee, need only show that the Event was

shown in Defendants' Establishment without authorization from Plaintiff. *See J&J Sports Prods.*

*v. Little Napoli, Inc.*, 2014 U.S. Dist. LEXIS 99032 at *5 (S.D. Tex. July 22, 2014) (Miller, J.).

14.      Plaintiff possessed the proprietary rights to exhibit and sublicense the Event. *See*

Exhibit "A" at ¶ 3; Exhibit "A-1". Through a licensing agreement with the promoter of the

Event, Plaintiff was licensed to exhibit the Event at closed circuit commercial locations

throughout Texas. *See id.* Thus, the Event was legally available to commercial establishments in

Texas only through an agreement with Plaintiff. *See* Exhibit "A" at ¶ 4; Exhibit "A-1".

15.      On the date of the Event, without authorization from Plaintiff, Defendants

intercepted and received or assisted in the interception and receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of Defendants' Establishment. *See* Exhibit "A" at ¶ 7; Exhibit "A-2". On the night of the Event, Plaintiff's Auditor entered Defendants' Establishment and personally observed the Event being exhibited on a large projection screen to the patrons inside of Defendants' Establishment. *See* Exhibit "A-2".

STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II)

16.     Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). Pursuant to the Communications Act, the amount of statutory damages to which Plaintiff is entitled for the violation shall be not less than $1,000.00 and not more than $10,000.00.  For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000.00 for Defendants' violation of the Communications Act.

17.     As stated *supra* and supported by the affidavits attached hereto, on the date of the Event, Defendants intercepted and received or assisted in the interception and receipt of the live telecast of the Event. Defendants then broadcast or assisted in the broadcast of the Event to the patrons at Defendants' Establishment for viewing therein. The patrons at Defendants' Establishment purchased meals and/or drinks while viewing the Event. Defendants broadcasted the Event to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff.

18.     In the instant case, as more fully discussed *infra*, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive

statutory damages. In the instant case, the lost income from the sale of the Event to Defendants'

Establishment represents only a starting place for the determination of the amount of damages to

which Plaintiff is entitled for the Defendants' wrongful acts.[3]

19.     In addition to the lost revenue which would have been derived from the delivery

and exhibition of the Event to Defendants' Establishment and its patrons, Plaintiff should receive

additional compensation as it has been deprived of the "value, benefits and profits derived" from

the unauthorized broadcast of the Event to Defendants' Establishment and its patrons as well as

the value of "business investment, business opportunities and goodwill." *See Am. Television &*

*Commc'ns Corp. v. Floken, Ltd.,* 629 F. Supp. 1462, 1466 (M.D. Fla. 1986).

20.     The *Declaration of Thomas P. Riley* details the types of damages suffered by

Plaintiff.  For example: (1) the loss of customers; and (2) the loss of revenue.  *See* Exhibit "A" at

¶¶ 10-13. But for Defendants' unauthorized broadcast of the Events, all or some of the patrons of

Defendants' Establishment would have become paying patrons and directly increased the fees

paid to Plaintiff by its authorized commercial establishments. *See id.* at ¶ 10.

21.     When negotiating sublicense fees, Plaintiff generally represents to legitimate

commercial establishments the locations of other authorized commercial establishments licensed

to receive the programming. *See* Exhibit "A" at ¶ 13. Therefore, when an unauthorized

commercial establishment intercepts, receives and broadcasts closed-circuit programming, such

---

[3]  *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would
have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the
statute.  There would be no incentive to cease the violation if the penalty were merely the amount that should have
been paid.") (internal citations omitted); Order at 5, *J&J Sports Prods., Inc. v. Papagallos I, Inc.*, No. 1:08-cv-
00691-SS (W.D. Tex. Apr. 17, 2009) (Sparks, J.) ("It would be difficult for the Plaintiff to prove its actual damages.
The lost licensing fee would only represent a starting point for determining the Plaintiff's actual damages.");
*Comcast Cable Commc'ns. v. Cabrera*, No. 04-cv-3431, 2005 U.S. Dist. LEXIS 36421, at *4 (D.N.J. Dec. 27, 2005)
("In setting the amount of statutory damages . . . the Court considers as a starting point the value of the
programming services to which Defendant had access without having to pay the applicable fees.").

as the Event, Plaintiff's reputation and goodwill suffers from what appears like a

misrepresentation. *See id.* Plaintiff is operating a legitimate business of the type that Congress

specifically sought to protect.[4]

22.    Given the benefits that Defendants received from the broadcast of the Event and

given the additional damages which Plaintiff has suffered, it is fair and reasonable to assess

against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00 for

Defendants' violation of the Communications Act by the exhibition of the Event.

DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

23.    Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(c)(ii) because

Defendants' actions were willful and "for purposes of direct or indirect commercial advantage or

private financial gain." In *ON/TV of Chi. v. Julien*, the Court of Appeals for the Seventh Circuit

interpreted willful under the Statute as "disregard for the governing statute and an indifference to

its requirements." 763 F.2d 839, 844 (7th Cir. 1985) (quoting *TransWorld Airlines, Inc. v.*

*Thurston*, 469 U.S. 111, 127 (1985)).

24.    By Defendants' default, Defendants have admitted an intentional exhibition of the

Event for financial gain.[5] Additionally, because of the absence of any way in which Defendants

could have "innocently" accessed the broadcast of the Event, it is apparent that Defendants

specifically and willfully acted to illegally intercept the transmissions of the Event for

---

[4] *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 773 ("Congress enacted the Cable Communications Policy Act of 1984 to address 'a problem which is increasingly plaguing the cable industry – the theft of a cable service.'") (citing *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1127 (2002)).

[5] *See J&J Sports Prods., Inc. v. Guzman*, No. CV-F-08-0091, 2008 U.S. Dist. LEXIS 51916, at \*13 (E.D. Cal. July 1, 2008) ("By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage.").

Defendants' commercial advantage.[6] Defendants knew that they were wrong to receive, intercept and divert the signal of the Event and to broadcast it in Defendants' Establishment. *See Jasper Grocery*, 152 F. Supp. 2d at 442; *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

25.    In the instant case, Defendants' actual knowledge that Defendants' acts were wrongful should be sufficient to demonstrate that Defendants' acts were willful. *See KingVision Pay-Per-View, Ltd. v. Valles*, No. EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. Mar. 30, 2001) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that there must have been some knowledge on the part of Defendants that such interception could not be had for free.").

26.    Regarding the second prong of the damages test under 47 U.S.C. § 605(e)(3)(C)(ii), it is patently obvious that Defendants' actions were "for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); *see also* Cable Communications Policy Act, P.L. 98-549, 5 U.S. Cong. News, '84 Bd. Vol.-8, 4745, 4750 ("[i]t is further intended that the term 'direct or indirect commercial advantage or private

---

[6] *See Joe Hand Promotions, Inc. v. Malespin*, No. 99 Civ. 8942, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) ("The respective Defendant elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing any one of these means to defraud plaintiff would be evidence of willfulness and would support an award of enhanced damages.").

financial gain' be interpreted broadly by both the courts in deciding actions. Those who willfully

violate subsection (a) and directly or indirectly enjoy commercial gain from those violations,

may be reached.").

27.    Defendants' purpose and intent in exhibiting the Event was to secure a private

financial gain and direct commercial advantage by misappropriating Plaintiff's licensed

exhibitions and infringing upon Plaintiff's rights, while avoiding proper payment to Plaintiff.

Courts determining willfulness damages have considered the following factors, such as here,

where Defendants:

- Broadcasting the Event on a big-screen television:  *See Joe Hand Promotions, Inc. v. Villalobos*, 2009 U.S. Dist. LEXIS 85183 at *6 (E.D. Cal. Sept. 16, 2009) ("Given the size of the establishment at issue, its location both in a relatively urban city and adjacent to an even larger urban city and the fact that the Program was shown on a large projection screen, the Court finds that the violations likely had more than a minimal impact."  The Court awarded damages totaling $60,000.).  *See* Exhibit "A-2"; Exhibit "D".

- Sold food and beverages:  *See Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *20 (S.D. Tex. 2014) (Harmon, J.) ("…courts have considered such factors as … the food and beverages it sold to customers…"); *Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 at *13-15 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013). *See* Exhibit "A-2"; Exhibit "D".

- Showed the Event in an urban area:  *See 152 Bronx, L.P.*, 2014 U.S. Dist. LEXIS 42798 at *20 ("…courts have considered such factors as … whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact…"). *See* Exhibit "A-2."

- Showing the Event in an Establishment in good condition: See *J&J Sports Prods. v. Tilakamonkul*, 2011 U.S. Dist. LEXIS 62120 at *9-10 (E.D. Cal. June 10, 2011). *See* Exhibit "A-2"; Exhibit "D".

28.    As willful violators of the Communications Act, Defendants must be held

accountable for a substantial amount above the market value of the sublicense fees to broadcast

the Event. Otherwise, other commercial establishments "would be encouraged to violate the law

knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." *See Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983). Thus, in the instant case, the award of additional damages must be sufficiently significant to deter Defendants and other unauthorized commercial establishments from stealing protected Communications.

29.     Therefore, in addition to the reasons set forth *supra*, the minimum amount of $50,000.00 (or five (5) times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff pursuant to Section 605(e)(3)(C)(ii). *See Joe Hand Promotions, Inc. v. Chios, Inc.*, 2012 U.S. Dist. LEXIS 104979 (S.D. Tex. July 27, 2012) (Hoyt, J.), *aff'd* 544 Fed. Appx. 444 (5th Cir. Tex. 2013) ("Generally, it is reasonable to increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts."); *J&J Sports Prods. v. Rivera*, 2014 U.S. Dist. LEXIS 95853 *11 (S.D. Tex. July 14, 2014) (Harmon, J.) ("Regarding additional damages for willful violations, the case law reviewed by this court suggests that a multiplier of three to eight times the statutory damages is appropriate.").

30.     The damages requested by Plaintiff is inline and consistent with one of the most commonly used statutory damages calculation methods used in the Western District of Texas, sometimes referred to as the middle of the statute method. Under this damage calculation method, the maximum statutory damage amount of $10,000.00 is awarded. Then, absent exceptional circumstances, the court then awards punitive damages in an amount that ranges between two times ($20,000.00) and five times ($50,000.00) the amount of the statutory damage award, which is the middle of the range of damages for a willful violation (with $100,000.00 being the maximum). *See* 47 U.S.C. § 605(e)(3)(c)(ii). This method is particularly appropriate

when a Defendants fails to offer mitigating evidence.

ATTORNEY'S FEES

31.     Plaintiff requests an award of attorney's fees pursuant to 47 U.S.C. §

605(e)(3)(B)(iii) and as provided in the *Declaration of David M. Diaz*. *See* Exhibit "B". Pursuant

to sections 605(e)(3)(B)(iii), the award of attorney's fees is mandatory. Section 605(e)(3)(B)(iii)

states, "[t]he Court... shall direct the recovery of full costs, including awarding reasonable

attorneys' fees..." Plaintiff seeks an award of one-third[7] of the actual and additional damages

awarded to Plaintiff for the prosecution of this action through the final judgment requested or,

alternatively, attorney's fees based on the hourly time presented. *See* Exhibit "B". Plaintiff also

seeks a contingent award of attorney's fees in the event certain post-trial, pre-appeal and

appellate services, in the event such services are rendered and do not lead to the reversal of the

Judgment as provided in the *Declaration of David M. Diaz*.[8] *See* Exhibit "B".

F.   CONCLUSION & PRAYER

32.     The evidence and argument presented by Plaintiff establishes that Defendants

illegally intercepted the closed-circuit telecast of the Event and that Defendants exhibited the

---

[7] Courts have recognized that a one-third contingent fee is reasonable for the prosecution of anti-piracy cases. *See* the *Memorandum Opinion and Order* in *Entm't by J&J, Inc. v. Nuno*, Civil Action No. 3:01-CV-0631-H, 2001 U.S. Dist. LEXIS 11050, at *2 (N.D. Tex. August 1, 2001) (Sanders, J.); *Entm't by J&J, Inc. v. David Cantu, Individually and d/b/a R&R Sports Club*, No. 3:01-CV-1803-R, (N.D. Tex. Dec., 10, 2002) (Buchmeyer, J.) (*Final Judgment*) f.n.2 ("The Court takes judicial notice that an award of attorney's fees in the amount of one-third (1/3) of the damages awarded herein is reasonable and necessary for this type of action."). In addition, such an award prevents the request for attorney's fees from becoming an unduly complicated matter for the Court. *See Nisby v. Comm'rs Court of Jefferson*, 798 F.2d 134, 137-38 (5th Cir. 1986) (Hinojosa, J., concurring) ("In a system burdened with increased caseloads, it is inappropriate and unnecessary to make a request for attorney's fees an unduly complex matter. The attorney's fees issue should not become a second complicated lawsuit. To determine the amount of an attorney's fee award, district courts should be given standards which are fair, simple and easily reviewable on appeal for abuse of discretion").

[8] The Court may award fees for appellate work on a contingent basis. *See Lyn-Lea Travel Corp. v. American Airlines, Inc.*, No. 3:96-CV-2068, 2000 U.S. Dist. LEXIS 14487, at *33 (N.D. Tex. Sept. 29, 2000), *vacated on other grounds*, 283 F.2d 282 (5th Cir. 2002) (citing *Norris v. Hartmax Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990) ("A long and consistent line of Fifth Circuit precedent allows awards of attorney's fees for both trial and appellate work.") (internal citations omitted)).

Event in their commercial Establishment without authorization from Plaintiff and without paying

the commercial licensing fee to Plaintiff. As a result, Defendants are liable for violating the

Communications Act. For these reasons, Plaintiff respectfully requests that the Court sign and

cause to be entered a final default judgment for Plaintiff against Defendants awarding Plaintiff:

(1)    Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00;

(2)    Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000.00;

(3)    Attorneys' fees in the amount of one-third (1/3) of recovery, or alternatively the hourly time presented in the *Declaration of David M. Diaz* (for prosecution of this case through default judgment); along with attorney's fees for post-trial and appellate services;

(4)    Costs and post-judgment interest at the highest lawful rate; and

(5)    Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

By: /s/
David M. Diaz
State Bar No. 24012528
ddiaz@jonesdavis.com
Attorney-in-charge
Paul W. Bishop III
State Bar No. 24107708
pbishop@jonesdavis.com

JONES, DAVIS & JACKSON, PC
15110 N. Dallas Parkway, Suite 300
Dallas, Texas 75248
(972) 733-3117 – Telephone

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of December, 2024, I mailed by United States Postal Service a copy of this document to the following non-CM/ECF participant:

800 Live Entertainment LLC                VIA U.S. CERTIFIED MAIL, RRR
c/o its registered agent, Stanley Winston    & U.S. FIRST CLASS MAIL
1010 N. Main Ave
San Antonio, Texas 78212

Stanley Winston                          VIA U.S. CERTIFIED MAIL, RRR
522 Carol Crest St.                      & U.S. FIRST CLASS MAIL
San Antonio, Texas 78220

DEFENDANTS

By: /s/ _____
        David M. Diaz